## POLACK *v.* STEINKE.

### Opinion delivered July 3, 1911.

1. EQUITY—WHEN JURISDICTION SUPPLIED BY CROSS BILL.—Where a bill in equity fails to state a cause of action for equitable relief, and a cross complaint states an equitable cause of action, the court has jurisdiction to grant relief to the party entitled thereto. (Page 35.)

2. EVIDENCE—PAROL PROOF OF FRAUD.—In a suit in equity to abate the purchase price of land on account of fraudulent representations of the vendor as to the quantity of land sold, though the contract was witnessed by writing, it was not error to permit the introduction of parol evidence relative to such fraud. (Page 35.)

3. WATERS—OWNERSHIP OF BED OF NAVIGABLE STREAM.—Under the Missouri law, all islands formed in the channel of a navigable river belong, not to the shore owner upon the main land, but to the county; and a bar formed in such island as an accretion thereto belongs also to the county, and not to the shore owner. (Page 36.)

4. VENDOR AND VENDEE—SALES OF LAND—MISREPRESENTATION OF QUANTITY OF LAND.—Where a vendor sold a body of land which he represented to contain 786 acres, but which in fact contained only 529 acres, he is liable to an abatement of the purchase money *pro tanto*. (Page 36.)

Appeal from Drew Chancery Court; *Z. T. Wood*, Chancellor; reversed.

STATEMENT BY THE COURT.

This action grew out of an exchange of Missouri lands for lands situated in Drew County, Arkansas, the trade having been promoted, the negotiations made, and the exchange agreed upon, in Nebraska. By its terms appellants were to convey 1900 acres of land in Drew County, Arkansas, and to pay appellee $1000 in cash and give him their note for $1500, due in 90 days, in exchange for 786 acres of land in Missouri, assuming the indebtedness upon said land, and to pay $500 commission to the broker who arranged the deal.

The complaint alleged that appellee falsely and fraudulently represented to him that the Missouri land contained 786 acres, that he relied upon said representation and was induced thereby to make the trade, that in fact said tract of land contained only 527 acres, which was not known to them at the time, nor until after the money had been paid, the note executed, and it and the first deed delivered to appellee in accordance with the agreement for exchange.

Prayer was for an abatement in the purchase price of the Missouri lands on account of the deficiency in acreage, for an injunction restraining appellee from collecting the note, for an allowance of the said abatement in the price of the Missouri lands in the ratio in which they were exchanged for the Arkansas lands as a failure of consideration of the Arkansas lands. That such quantity of the land, according to the ratio of the exchange as should be allowed as a failure of consideration for the transfer of the Arkansas lands, be set aside and partitioned to them, or that they be awarded damages in the sum of 33 per cent. of the total value of the Arkansas lands conveyed to appellee and of the moneys paid or to be paid and the indebtedness assumed by appellants.

The defendant filed an answer and cross complaint, admitting the ownership of the Drew County lands in 1908 by appellants, denying specifically all material allegations of the complaint and especially any false representations made, and alleged that the parties entered into a contract for the exchange of the lands on the first day of October, 1908, and set out a copy of the contract. That by it appellee agreed to convey to plain-

tiffs the S. E. ¼ and E. ½ S. W. ¼, section 7 and fractional section 18, township 6, range 42, Atchison County, Missouri, subject to the mortgage indebtedness, and the taxes of 1908. That plaintiffs agreed to convey by warranty deed certain lands in Drew County, describing them, containing 1900 acres, which would be taken by appellee subject to the mortgage thereon; or, if he should buy the lands in sections 23, 26, 35 and 36, to be sold under mortgage on October 28, 1908, to give a mortgage of $7500 back to appellants. That both parties to the contract were to deposit their respective deeds, conveying the lands, with Boehmer & Beckman of Lincoln, Neb., and that appellants should deposit with said firm $1000 in cash, and their note for $1500 to be delivered when the contract was completed, and that each party should pay said Boehmer & Beckman $500, half of the commission due them for procuring the trade. That on the 27th of October he delivered to appellants his deed of the Missouri lands after an examination of said lands by them, and that they immediately recorded said deed and entered into the possession of the lands. That he purchased at the sale on the 28th of October the lands in said sections, and executed and delivered the mortgage and note to appellants as agreed, and fully performed all of the conditions of the contract upon his part, but that they had failed to pay their note of $1500, and failed, neglected and refused to deliver to him their deed conveying all of said lands which were to be conveyed by them; that they had not conveyed to him as agreed the S. ½ of the S. E. ¼ of the S. W. ¼ of the S. W. ¼, section 14 and the lands in other sections in Tp. 13, S. R. 6 W., in all 360 acres. That the Drew County lands were exchanged on the basis of $20 an acre, and on such basis the lands not conveyed to him were of the value of $7200 and the equity of redemption not conveyed in the remainder of the lands was worth $1000. It challenged the jurisdiction of the court because appellants had not performed their contract, and because they had an adequate and proper remedy at law, and prayed judgment for a specific performance of the contract by plaintiffs for said sum of damages, and the amount of the $1500 note, and that same be declared a lien on the lands, etc.

Appellants replied, admitting the execution of the contract under which the exchange was made, as set out in the cross

complaint, and that appellee delivered the deeds and the mortgage, and performed his part of said contract; admitted taking possession of the Missouri land, alleging that they did so under the belief and relying upon the representations made by appellee that there were 786 acres of land in the contract, and without any notice of any shortage at the time, and that when they were apprised of the deficiency in acreage they immediately notified appellee and demanded that the shortage be made good; alleged further that they delivered the deed to the agents conveying the lands they agreed to convey under the contract, also $1000 in cash, and their note for $1500 according to the terms of the contract, and directed said agents to turn over to appellee said deed, money and note, which was done; that said deed contained a reference to the contract, and, after the deal was consummated, Mr. Boehmer requested them to make another deed of correction, only omitting any reference to the contract; that they immediately executed said deed as requested, and have been since ready and willing to deliver same, although it was not necessary to convey the title, and now tender the said deed into court; that, upon discovering the shortage in the lands, they notified defendants they were ready to pay the note for $1500 when the error was corrected, and they filed this suit to enjoin its collection until the matter of the shortage was adjudicated. They had been at all times ready to pay said note and deliver said last deed after the adjustment of said shortage. They denied each and every allegation of the cross complaint, not admitting that appellee was damaged in any sum whatever.

The testimony tended to show that the agreement for the exchange of lands was made and the contract signed as alleged in the pleadings; that appellant delivered his deed conveying the lands as agreed by said contract, the appellants delivering with theirs the $1000 in money and $1500 note; that they immediately recorded their deed and took possession of the Missouri lands, and shortly notified appellee's agents, Boehmer & Beckman, of the shortage in the said tract of land.

There is no mention in the contract of sale nor in appellee's deed to appellants of the Missouri lands of the quantity of lands contained in the tracts, and both said contracts of sale and deed described part of the land as fractional section 18.

The proof tended further to show that appellants were told, before the making of the contract for exchange, that the Missouri lands contained 800 acres; that they were afterwards assured that they contained 786 acres, and furnished plats, showing a description of such lands as containing that number of acres, being shown one plat at the time one of the appellants was on the tract, making an examination thereof, which showed said number of acres and the lands extending to the Missouri River, without any showing of the old river channel in said fractional section 18. That the land described in said contract and deed to appellants only contains 527 acres, if the west boundary is the old channel of the Missouri River, as the proof tends to show it is. Along the west line of the lands, which appellant contends was pointed out to him as the boundary, is a distinct and well-defined channel, the old river bed or a big slough in which was water from 4 to 10 rods wide. Beyond it was a sandbar and island, and said bar across said old channel began forming next to the island and extended from it towards the mainland.

Polack testified: "I do not claim there is any shortage if the sandbar west of the old channel is part of fractional section 18 of the original land, because there is a sufficient number of acres if the sandbar west of the old river channel belongs to the land." He also stated "that his title to the land described had not been disputed, but the county claimed said sandbar and the land to the south in section 19 and to the east in section 17. That at the time of the examination he did not understand that the sandbar was included in his land, but that it was bounded on said old river channel; that Mr. Beckman handed him a plat at the time 'Exhibit A,' saying it was a copy of the survey that Mr. Beckman made before he left the office, and: 'You see it shows 240 acres in section 7 and the N. ½ of section 18 is full, and in S. E. ¼ there are 142 acres,' and that in the S. W. ¼ makes 786, and then I figured the number of acres over as put down on the plat, and it made 786. When we got back to the office at Lincoln, Mr. Beckman handed me Exhibit B, another plat, and said: 'I made a mistake in the number of acres. I see it figures up according to the plat but 786 acres, but doubtless there are enough accretions to make it 800 acres.' Several letters were introduced,

showing the notification by Polack of the shortage claimed in the land and a demand for its adjustment. The value of the Missouri sandbar was shown to be $5 or $10 an acre, and of the Arkansas lands $7.50 per acre.

Under an act of the Missouri Legislature, islands forming in navigable rivers belong to the counties in which they are formed. The chancellor found that the contract of exchange was made for the lands in Missouri falsely represented to contain 786 acres, that there was a shortage in the acreage of the tract, amounting to 259 acres, for which appellant should be reimbursed, and that they failed to execute a deed for 120 acres of the Drew County land, which were of the value of $7.50 per acre, and that they had complied with their contract except as to the deed to the following land describing the 120 acres; decreed that they were not required to convey said 120 acres, that the title of same remain in them, and that they recover from appellee the value of the balance of the shortage, 139 acres at $7.50 an acre—in all $1042.50—with interest from date of the judgment, and declared same a lien upon all of the tract of land in Drew County set out in the contract and conveyed, except the 120 acres exempted, and that appellants should have an execution against said lands for payment of the judgment unless it was paid in six months.

Both parties excepted to the judgment and prayed an appeal to the Supreme Court.

*Theo. H. Polack, pro se* and *James C. Knox,* for appellants.

1. The Missouri River is a navigable stream, and the courts of Missouri hold that a shore owner only takes to low water edge. It is also held that the shore owner has title to imperceptible additions by accretion or reliction; but if an island forms in the river, it is the property of the county within which such island was formed, and if by accretion the island water margin unites with the shore, the newly made land becomes part of the island, and the ownership of the riparian owner is not extended. 61 Mo. 345; 86 Mo. 209; 117 Mo. 33; 115 Mo. 396; 132 Mo. 131; 156 Mo. 33; Mo. Session Laws, 1895, p. 207; 134 Mo. 581; 137 Mo. 271; 193 Mo. 399; 70 Mo. 463; 44 Mo. 352; 93 Mo. 477; 8 Mo. App. 266; 120 Mo. 541; 149 Mo. 228; 155 Mo. 191; 168 Mo. 267; 114 Mo. 352; 112 Mo. 525. Arkansas

decisions are to the same effect, with the exception that in this State the shore owner takes to ordinary high water mark. 53 Ark. 314; 73 Ark. 199.

2. Appellant concedes that, in order to be entitled to relief in equity, there must have been fraud on the part of appellee. Such fraud need not necessarily be wilful, premeditated fraud and misrepresentation. The representation of a matter of fact made by a vendor, which is relied on by the vendee, and afterwards found to be false, constitutes a legal fraud; and when a vendor repeats a false and fraudulent representation made to him, it is in legal effect a fraud, though the vendor at the time he made the representation believed it to be true. It was appellees' duty under the circumstances to disclose all the knowledge they had, and failure to do so was a legal fraud. 19 Ark. 102; 61 Ark. 120.

3. The court erred in determining the relief which should be granted, in this, that, having found the shortage in the Missouri land to be 259 acres, it erroneously found that plaintiffs below failed to convey 120 acres, whereas under the evidence it could not have been more than five acres, and deducted this 120 acres of Arkansas land from the 259 acres shortage in Missouri, and allowed decree for the value of the difference at $7.50 per acre.

*R. W. Wilson* and *F. A. Boehmer*, for appellee.

1. There is undisputed testimony that the land in question has been formed by a gradual building up, known as accretions, and that the river has gone west gradually, not by avulsion or sudden freshet.

Land formed by a gradual and imperceptible accretion, or by gradual recession of the water, belongs to the contiguous land to which the accretion is made. The river is a natural boundary, and its gradual advance or retreat carries the owner's line with it, except in case of avulsion, or sudden and perceptible change of the water's course. 73 Ark. 20 and cases cited. Tested by this rule, the land is in legal sense an accretion, and belongs to and was conveyed with fractional section 18.

2. In the contract and in the deed the parties did not specify any number of acres, but each time described the Missouri tract as fractional section 18. It must be presumed

that the parties did not intend to engraft into the contract any warranty as to the number of acres in that tract, and it cannot be engrafted by parol.    80 Ark. 505.

All antecedent negotiations, whether written or oral, are deemed to be merged into a written contract which covers the subject-matter of the antecedent negotiations, when such contract is itself free from ambiguity.    83 Ark. 163.    All the oral testimony relative to warranty as to the number of acres should have been excluded.    The parties must stand upon the written   contracts.      83   Ark.   105;   *Id.*   241;   *Id.*   283;   38 Ark. 385.

3.    One who contracts for the purchase of real estate after representations and statements of the vendor as to its character and value, but after he has visited and examined it himself, and has the means and opportunity of verifying such statements, cannot avoid the contract on the ground that they were false or exaggerated.    9 Cyc. 42.    See also 2  Pomeroy's Eq. Jur., § 893; 30 Ark. 373; 47 Ark. 48; 83 Ark. 412; 71 Ark. 91.

KIRBY, J., (after stating the facts).    It is first objected that the chancery court was without jurisdiction of this cause, it being contended that it is but a suit for breach of warranty as to quantity of land, and that appellants have an adequate remedy at law.

It is not necessary to decide whether the complaint states a cause of action for equitable relief; for, if it be conceded that it does not, the cross complaint stated a cause of action clearly congizable in a court of equity, and supplied any defect of jurisdiction, and placed the court in possession of the case with right to grant relief to the party entitled thereto.    *Conger* v.  *Cotton,*  37  Ark.  286;  *Radcliffe* v.  *Scruggs,*  46  Ark.  96; *Crease*  v.  *Lawrence,*  48  Ark.  312;  *Dickinson*  v.  *Arkansas City Imp. Co.,* 77 Ark. 570.

The action was not one for a breach of warranty as to quantity, there being no quantity or number of acres specified in either the contract for the exchange of these Missouri lands or the deed conveying them, but for an abatement of the purchase price on account of false representations and statements made to appellants and relied upon by them, as to the quantity of land contained in the tract, before the sale and as an inducement to it, and no error was committed in permitting

the introduction of parol testimony relative thereto.  *Harrell* v. *Hill,* 19 Ark. 111.

It is almost undisputed that the Missouri lands were represented to contain about 800 acres and definitely 786 acres, such amount being shown on the plats exhibited to appellant, Polack, and relied upon in the making of the exchange and as an inducement to it, and it is not denied that the lands as described and conveyed only contain 527 acres, unless the sandbar west of the old river channel in fractional section 18 constitutes a part of them.  The preponderance of the testimony shows that the island formed in the Missouri River on the west side of the old channel in section 18, and that the sandbar was formed by accretion to it and not to the shore land of appellee. Under the laws of Missouri, the title to islands forming in navigable rivers belongs to the county in which the island forms, and the riparian rights of owners of lands along that river, which is a navigable stream, are also well defined.

By the decision of its courts, the shore owner takes only to the edge of the water, low water, and is of course entitled to the land added to his land by accretion or reliction.  When, however, the bar forms and an island is made in the river, and afterwards by accretion to the island the land finally forms across the channel to the mainland, it is regarded as a part of the island, and does not belong to the shore owner upon the main land, but belongs to the county under the laws of said State.   Session Laws 1895, 207; *Benson* v. *Morrow,* 61 Mo. 345; *Cooley* v. *Golden,* 117 Mo. 33; *Rees* v. *McDaniel,* 115 Mo. 145; *Moore* v. *Farmer,* 156 Mo. 33; *Hahn* v. *Dawson,* 134 Mo. 581; *Voglesmeier* v. *Prendergast,* 137 Mo. 271; *Frank* v. *Goddin,* 193 Mo. 399.   See also *St. Louis, I. M. & S. Ry. Co.* v. *Ramsey,* 53 Ark. 314; *Nix* v. *Pfeifer,* 73 Ark. 199.

The bar west of said old channel, having formed by accretion to the island, was not the property of the shore owner, and not included within the description of the lands conveyed to appellants, thus making a shortage of 259 acres not conveyed, for which they were entitled to compensation.  *Harrell* v. *Hill,* 19 Ark. 111; *Drake* v. *Eubanks,* 61 Ark. 120.   The testimony showing that the sandbar with which appellants said they would have been satisfied and have made no complaint of shortage, if it was included within their grant, was of about the same value

as the Drew County lands, the chancellor correctly found that appellants were entitled to the shortage in acreage in the Missouri lands of the amount shown at the price of $7.50 per acre. He was mistaken, however, in his finding that 120 acres of the Arkansas lands included in the exchange had not been conveyed and decreeing the title thereto to remain in appellants; the tract as described in the cross complaint being a part of section 14, containing only 5 acres, instead of 120. He should have allowed appellants for the whole shortage, 259 acres, at $7.50 the reasonable value of the land they expected to get, and with which they would have been satisfied, in all $1942.50, and interest at the rate appellants' note bears, and directed a delivery of the deed tendered in court conveying all the Arkansas lands to appellee. Upon this appellee should be credited with the amount of their said $1500 note, which should be cancelled, and for the balance a lien fixed as a condition for equitable relief upon the lands in Drew County.

The decree is reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.