UNITED STATES of America, Appellee,

v.

SOUTHERN INVESTMENT COMPANY, Appellant.

SOUTHERN INVESTMENT COMPANY, Cross–Appellee,

v.

UNITED STATES of America, Cross–Appellant.

Nos. 87–2664EA, 88–1129EA.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1988.

Decided May 25, 1989.

---

Charles Nestrud, Little Rock, Ark., for appellant.

Blake A. Watson, Washington, D.C., for appellee.

Before McMILLIAN and BEAM, Circuit Judges, and HARPER,* Senior District Judge.

HARPER, Senior District Judge.

Appellant/cross-appellee is Southern Investment Company (hereinafter Southern Investment). Appellee/cross-appellant is the United States acting through the Army Corps of Engineers (hereinafter the Corps). The Corps brought this enforcement action against Southern Investment under the Rivers and Harbors Act, 33 U.S.C. § 403 (hereinafter RHA), the Refuse Act, 33 U.S.C. § 407, and the Clean Water Act, 33 U.S.C. § 1311, 1344 (hereinafter CWA) to

---

* The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

require the removal of fill and refuse placed in a backwater channel of the Arkansas River in the City of Little Rock, Pulaski County, Arkansas.

The United States District Court for the Eastern District of Arkansas found that Southern Investment had deposited fill and refuse materials in navigable waters of the United States. The district court issued an injunction ordering Southern Investment to implement remedial measures regarding the fill and refuse, and prohibiting Southern Investment from further engaging in filling activities and disposing refuse on the subject property. The district court gave Southern Investment the option of implementing an alternative remedy (which will be discussed later). Southern Investment appeals the judgment of the district court. The Corps has filed a cross-appeal pertaining to findings the district court made regarding the grandfathering of certain fill, and to the alternative remedy offered by the district court to Southern Investment.

The following facts give rise to this appeal and cross-appeal. Southern Investment is a real estate investment company in Little Rock, Arkansas. In the early 1950's, it acquired twenty acres of Arkansas Riverfront property. Southern Investment testified that it was holding the land for future development.

During the 1960's, the Corps began working on the David D. Terry Lock and Dam (hereinafter the dam project). An artificial, permanent pool was created upstream of the dam as a result of the construction of the dam. This pool was at elevation 231 feet mean sea level (msl). The dam project subjected certain lands adjacent to the Arkansas River to potential flooding. Consequently, the Corps sought to acquire those lands so affected by the potential flooding, a portion of which included the riverfront property owned by Southern Investment. In anticipation of the condemnation proceedings, the Corps had an ordinary high water line (hereinafter OHWL) survey completed. Under the RHA, the Refuse Act, and the CWA, waters below the OHWL are declared waters of the United States and are subject to

regulatory jurisdiction by the Corps. In 1975, the CWA expanded the Corps' jurisdictional authority to include wetlands. The Corps concluded that the OHWL for Southern Investment's land was 233.1 msl. The Corps sought a flowage easement for river lands between 234 msl and 233.1 msl, an area which partially represented additional wave wash damage.

Southern Investment was reluctant to give up its property. An agreement was reached with the Corps whereby Southern Investment would construct two dams. These dams were to be located on the east and west ends of the backwater channel situated on the subject property. This backwater channel exists parallel to the Arkansas River. The dams would purportedly sever the backwater channel from the Arkansas River. This would eliminate the possibility of flooding of the backwater channel caused by the dam project and the resultant discharging of pollutants from the backwater channel into the Arkansas River. The Corps thus agreed, on the basis of Southern Investment's construction of these two dams, not to include that property in their plans to acquire a flowage easement. The dam that Southern Investment constructed on the east end of the backwater channel washed away within a matter of a few weeks following its completion. There currently is a connection with the Arkansas River through the east end of the channel.

The district court found that between 1966 and 1980, Southern Investment deposited fill material on the bank or adjacent to the bank of the backwater channel, and deposited refuse in the backwater channel. The district court further found that the backwater channel was below the OHWL and was connected to the Arkansas River as early as the year 1966. Southern Investment testified that it filled the low lying areas of its property as part of its development plans. Southern Investment further testified that it had understood that the Corps approved of the plan to continue filling the property and eventually develop it as an industrial park. During the mid to late 1970's, the general population began to use the site as an unofficial "dumping

ground." Southern Investment did not authorize this dumping and would periodically attempt to clean the area because of unsightliness.

In 1981, the Corps visited the subject property. They sent a cease and desist letter to Southern Investment ordering the removal of unauthorized fill and refuse. Southern Investment cleaned up most of the refuse, but did not remove the fill that had been deposited in the channel. The Corps inspected the site in July, 1982, again in July, 1986, and then filed this suit in November, 1986.

The district court enjoined Southern Investment from further depositing refuse or fill materials on the subject property, and ordered Southern Investment to remove the fill material in an area 175 feet east of the dam that was placed on the west end of the backwater channel for a distance extending 250 to 300 feet. The district court afforded Southern Investment an alternative remedy of constructing a ditch along the northern boundary of the backwater channel in order to allow free drainage from the wetlands to the northern boundary of the channel, and constructing a retaining wall above the OHWL to secure the fill and refuse material, thereby preventing the flowage of such material into the Arkansas River and the backwater channel. The final part of the alternative remedy would call for Southern Investment to level the embankment at the OHWL by removing the boulders, concrete blocks, sheet metal and wire coils in an effort to improve the physical appearance of the subject property. The district court further found that the west dam and the area of fill extending 175 feet east of the west dam were erected and filled prior to 1968, were grandfathered, and were, therefore, exempt from the Corps' jurisdiction which became effective after that date.

We are considering three different environmental statutes in this case:

(1) Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge after October 18, 1972, of any pollutant into waters of the United States, except in compliance with, *inter alia,* a permit issued by the Secretary of the Army pursuant to Section 404 of the CWA, 33 U.S.C. § 1344. Prior to July 25, 1975, the Corps' jurisdiction under the CWA was limited to property located below the OHWL. After that date, the Corps' jurisdiction under this statute was expanded to include wetlands.

(2) Section 10 of the RHA, 33 U.S.C. § 403, prohibits after December 18, 1968, any work which alters or modifies the course, condition or capacity of a navigable water, unless a prior permit has been obtained from the Secretary of the Army.

(3) The Refuse Act, 33 U.S.C. § 407, prohibits any person to deposit, or cause, suffer, or procure to be deposited any material, on the bank of any navigable water or tributary of a navigable water, that is liable to be washed into that navigable water by storm, flood or otherwise. The Corps' jurisdiction under both the RHA and the Refuse Act is limited to property located below the OHWL. Under the RHA, all fill deposited below the OHWL prior to December 18, 1968, is grandfathered. Under the CWA, all fill deposited below the OHWL prior to October 18, 1972, is grandfathered; fill deposited after July 25, 1975 that is above the OHWL but on wetlands is subject to the Corps' jurisdiction.

Southern Investment challenges the district court's holding that the OHWL extends to the subject property, that the subject property is a wetland, that certain portions of the deposited fill were not grandfathered, that the Corps properly exercised its jurisdictional authority, and that the Corps should not be estopped from alleging that Southern Investment violated the three statutes in question. Several of these issues are related to one another and will be addressed accordingly.

## DISCUSSION OF ISSUES ON APPEAL

■ The district court found that the backwater channel was below the OHWL and was connected to the Arkansas River as early as 1966. Under the RHA, the CWA, and the Refuse Act, waters below the OHWL are waters of the United States for the purposes of the Corps' regulatory

jurisdiction. *See* 33 U.S.C. § 403; 33 U.S.C. § 1362(7); and 33 U.S.C. § 407. We are concerned here with the OHWL determination that was made after the year 1968, because in that year the Corps first assumed regulatory jurisdiction over waters below the OHWL. The standard of review that this Court must utilize in deciding this question is the clearly erroneous standard because the location of the OHWL is a question of fact. Fed.R.Civ.P. 52(a); *United States v. Cameron*, 466 F.Supp. 1099, 1112 (M.D.Fla.1978); *see United States v. Sunset Cove, Inc.*, 514 F.2d 1089, 1090 (9th Cir.1975), *cert. denied*, 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975) (court's location of the mean high-water line held not to be clearly erroneous).

In 1977, the Corps conducted a study in an effort to measure the OHWL, and established it at 234.0 msl at river mile 116.8. The Corps' expert witness, William Henson, described the method utilized by the Corps in reaching this measurement as follows: By (1), walking along the river "at random locations on the bank and look[ing] for the lowest non-tolerant vegetation growing that has some size to it;" (2) surveying the elevation of the ground where the vegetation evidence is growing; (3) plotting the elevation and river mile location on a profile; and, (4) drawing a line through the preponderance of data points. Henson is a civil engineer employed by the Corps. He testified that this is an accurate method of determining the OHWL. He further gave his opinion that the post-project OHWL extended into the backwater channel, basing his opinion on the 1977 OHWL study, an on-the-ground planetable survey conducted in 1966, aerial photographs, a survey prepared during an inspection in 1981, and personal observation, including a 1987 canoe trip up into the channel.

Southern Investment criticizes the methods utilized by the Corps to establish the OHWL. Specifically, Southern Investment claims that the 1977 study was inadequately performed because the data points were too widely spaced and the vegetation selected was immature; and further, that the 1966 survey was outdated. Southern Investment also takes issue with the Corps' use of a technique called the projection method to assign the OHWL at river mile 116.8. This method requires that the OHWL graph for the Arkansas River be projected onto the planetable survey of the subject property.

■ On review, we find that the district court's finding that the post-project OHWL extended to the subject property was not clearly erroneous. Viewed in entirety, the testimony submitted by the Corps' expert witness and the physical and documentary evidence support this conclusion. Southern Investment presented an expert witness who testified that the projection method utilized by the Corps was an inadequate means of establishing the OHWL. We are, however, unwilling to reverse the district court's finding in this matter. We will not assess the weight given by the district court to the testimony and the evidence. We will only decide whether the district court's findings were based on a permissible view of the testimony and evidence. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–574, 105 S.Ct. 1504, 1511–1512, 84 L.Ed.2d 518 (1985). This issue on appeal does not warrant reversal.

■ Southern Investment next challenges the district court's determination that the subject property is a wetland. The Corps' regulatory jurisdiction under the CWA can be based on either the OHWL or the presence of wetlands. Congress expanded the Corps' jurisdiction to include wetlands effective July 25, 1975. The dam project went into effect on September 24, 1968. Thus, any fill material deposited above the OWHL, but on wetlands, is subject to the Corps' regulatory jurisdiction only if it occurred subsequent to July 25, 1975.

The District Court entered a permanent injunction dated from the present against further filling activities. Southern Investment argues that the district court's bench order does not clearly state the extent to which the injunction was based on wetlands jurisdiction. It is further argued that the district court made a wetlands determination applicable only to the area of the subject property where no fill was deposited.

We partially disagree with Southern Investment's interpretation of the district court's bench order. The order plainly refers to two separate findings pertaining to the presence of wetlands. The court first held that the "backwater channel where no fill material or refuse was deposited in substantial quantities" was and is a wetland. The court enjoined future deposit of refuse and fill in this area without a permit. Second, the court found that the area below and above the ordinary high water mark commencing 175 feet east of the west dam and extending for approximately 250 feet was also a wetland. In regard to this second finding, the district court ordered Southern Investment to remove the refuse and fill material.

■ Again, the standard of review that we must apply is the clearly erroneous standard because the determination that an area is a wetland is a finding of fact. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 131, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985); *Conant v. United States*, 786 F.2d 1008, 1009 (11th Cir.1986).

■ In respect to the finding that the area of the backwater channel where no fill material or refuse was deposited is a wetland, we hold that the district court's determination was not clearly erroneous. Henson testified that the area is a wetlands. He based his opinion on aerial photographs, documentation of the river gauge indicating one hundred percent inundation after the dam project went into effect, and personal observation.

■ Southern Investment's expert witness agreed that the backwater channel is currently a wetland. The gist of Southern

Investment's challenge relating to this issue lies in the contention that the Corps cannot assert jurisdiction because it created the wetland. We disagree. Generally speaking, "federal jurisdiction is determined by whether the site is presently wetlands and not by how it came to be wetlands." *United States v. Ciampitti*, 583 F.Supp. 483, 494 (D.N.J.1984). *See also United States v. Akers*, 651 F.Supp. 320, 321–323 (E.D.Cal.1987); *Bailey v. United States Army Corps of Engineers*, 647 F.Supp. 44, 48 (D.Ida.1986); and *Track 12, Inc. v. District Engineer*, 618 F.Supp. 448, 450–451 (D.Minn.1985).

Southern Investment relied on *United States v. City of Fort Pierre, S.D.*, 747 F.2d 464 (8th Cir.1984) as support for the argument that the Corps may not assert jurisdiction over artificially created wetlands. This argument is not well grounded. In *Fort Pierre*, this Court held that the Corps did not have regulatory jurisdiction over wetlands that were solely an inadvertent result of unrelated river maintenance (in that case, river dredging activity). We were careful to limit our holding and stated that " * * * our holding does not challenge the Corps' jurisdiction with regard to any other artificially created wetland-type environment. Rather, our holding is limited to the situation in which the Corps, as an unintended byproduct of ordinary river maintenance, inadvertently creates a wetland-type ecological system on private property where no such system previously existed." *Fort Pierre*, at 467.

■ The evidence strongly suggests that the area was a wetland as long ago as the year 1966, so it is highly plausible that the Corps' activities did not even create the wetland conditions. Further, even if we agreed with Southern Investment that the Corps undisputably caused the wetland conditions on the subject property, we would hardly classify the construction of the dam project as "ordinary river maintenance." Id. Therefore, the district court's finding that the area of the backwater channel where no fill material or refuse was deposited in substantial quantities is a wetland is not clearly erroneous. For the

same reasons, we also hold that the testimony and the evidence support the district court's finding that the illegal fill area was a wetland prior to being filled. The district court's findings that areas of the subject property are wetlands were supported by the record and do not warrant reversal.

■ The Corps has jurisdiction over wetlands under the CWA as of the year 1975. Fill deposited prior to that time on wetlands above the OHWL is grandfathered. However, we cannot ascertain from the district court's order the amount of fill involved. This question is remanded to the district court so a finding can be made pertaining to the period of time during which the portion of fill located above the OHWL was deposited there. The portion that was deposited subsequent to July 25, 1975 must be removed.

■ Southern Investment also challenges the district court's findings pertaining to grandfathered fill under the RHA. Fill material that was deposited in waters of the United States prior to December 18, 1968 is grandfathered. 33 C.F.R. 330.3. Southern Investment argues that the grandfathering line established by the district court does not include all of the fill deposited prior to 1968. The RHA's grandfathering provision also contains language which allows an exemption for "work completed * * * in waterbodies over which the district engineer had not asserted jurisdiction at the time the activity occurred provided * * * there is no interference with navigation." 33 C.F.R. 330.3(b). Southern Investment submits that the Corps disclaimed an interest in the subject property in 1967, and did not revoke the disclaimer until May 1, 1981, after all the fill had been deposited, thereby providing a further basis for grandfathering under the RHA.

■ We hold that the testimony and evidence in the form of aerial photographs support the Corps' assertion that the substantial portion of filling activities took place subsequent to December 18, 1968. We will not disturb the district court's finding as they are based on a permissible view of the evidence.

■ In respect to Southern Investment's contention that the Corps disclaimed an interest in the subject property, we must disagree. As far as this Court can ascertain, it appears obvious that the Corps did forego the use of the subject property for the flowage easement. This fact does not, however, relieve the Corps of its power to assert regulatory jurisdiction over the property. We hold that from the date of December 18, 1968, all fill deposited on the subject property without a permit was not grandfathered under the RHA, regardless of the Corps' decision not to utilize the area for the flowage easement.

■ The district court held that Southern Investment had deposited refuse on the subject property in violation of the Refuse Act. The Refuse Act applies to two different offenses: (1) The discharge of refuse of any kind or description into any navigable water or tributary thereof; and, (2) the deposit of material on the bank of any navigable water or tributary where the material is likely to be washed into such navigable water and impede or obstruct navigation. *United States v. Consolidation Coal Company,* 354 F.Supp. 173, 175 (N.D.W. Va.1973). Refuse includes "all foreign substance and pollutants apart from those 'flowing from streets and sewers and passing therefrom in a liquid state' into the water course." *Reserve Mining Company v. Environmental Protection Agency,* 514 F.2d 492, 530 (8th Cir.1975), quoting *United States v. Standard Oil Co.,* 384 U.S. 224, 230, 86 S.Ct. 1427, 1430, 16 L.Ed.2d 492 (1966).

■ Southern Investment argues that the deposit of refuse on the subject property would not violate either provision of the Refuse Act for two reasons: First, no refuse is being discharged into navigable waters, and second, the fill in place is heavy demolition material unable to be washed into the river. Southern Investment cleaned up some refuse in 1981, but the Corps presented evidence that refuse remains in the backwater channel in the form of wire, pieces of board, plywood, old tires, pieces of steel, sheets of tin, and a washing machine.

We have already determined that the district court correctly found that the backwater channel was below the OHWL. In view of the substantial and credible evidence, we hold that the district court properly found that Southern Investment violated the Refuse Act. This issue does not warrant reversal.

Southern Investment raised the affirmative defenses of estoppel, waiver and laches which the district court found "not only are not well founded but have no basis in this lawsuit." The district court first noted the sovereign status of the plaintiff and then pointed out that in order to hold the government liable, it would have had to take "affirmative steps in bad faith to mislead or to establish a foundation that Southern [Investment] took certain steps in reliance thereon to its detriment." *See Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (Government may not be estopped on the same terms as other litigants).

Southern Investment relies on two arguments to assert its estoppel defense. First, Southern Investment refers to project maps which were prepared by the Corps in anticipation of the construction of the dam. The maps do not show the OHWL as extending into the backwater channel. Southern Investment argues that this fact precludes the Corps' assertion of jurisdiction over the subject property. Second, Southern Investment relies on alleged promises by the Corps during easement negotiations that the Corps did not have regulatory jurisdiction over the property, and that Southern Investment could fill the channel between the two dams.

In respect to the first argument pertaining to the project maps, the district court could have properly relied on testimony presented by the Corps showing that the OHWL on the project maps was drawn outside of the backwater channel simply for the purpose of defining the easement boundary. As we noted earlier, the fact that the Corps decided to eliminate the backwater channel from the flowage easement does not mean that the Corps waived its regulatory jurisdiction.

Southern Investment's second argument is equally unsupported. It was heavily disputed at trial whether representatives of the Corps did, in fact, tell Southern Investment that the area between the two dams could be filled. We find that even if such representation was made to Southern Investment, the requirement of affirmative misconduct is lacking in this case. The doctrine of equitable estoppel is not applicable to the facts herein and the district court was correct in rejecting Southern Investment's reliance on this defense.

Lastly, Southern Investment argues that the Corps attempted to place a "new navigational servitude" on the property, beyond the OHWL to artificially created wetlands. In this argument, Southern Investment submits that the Corps is without power to exercise regulatory jurisdiction over the subject property without paying just compensation. The district court rejected this argument on the grounds that the assertion of a taking may not be raised as a defense to an enforcement action brought under the CWA.

In *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 129, n. 6, 106 S.Ct. 455, 460, n. 6, 88 L.Ed.2d 419 (1985), the court said:

> " * * * this lawsuit is not the proper forum for resolving such a dispute: if the Corps has indeed effectively taken respondent's property, respondent's proper course is not to resist the Corps' suit for enforcement by denying that the regulation covers the property, but to initiate a suit for compensation in the Claims Court."

Southern Investment's attempt to raise a taking defense is inappropriate and the district court properly ruled in rejecting this argument.

Accordingly, we affirm in part and remand in part. The district court did not err in holding that the OHWL extended to the subject property, that the subject property was a wetland, that the Corps properly

exercised its regulatory jurisdictional authority, that Southern Investment deposited fill and refuse on the subject property subsequent to December 18, 1968, and that the affirmative defense of equitable estoppel was not available to Southern Investment in this case. We remand that portion of the district court's decision pertaining to the grandfathering of fill deposited on wetlands so a determination might be made concerning the amount of fill that is located on wetlands above the OHWL, and when it was placed there.

### DISCUSSION OF ISSUES ON CROSS–APPEAL

■ The Corps has filed a cross-appeal wherein it challenges the district court's finding that the fill located 175 feet east of the dam located at the west end of the backwater channel was placed before 1968. The Corps further challenges the decision of the district court to offer Southern Investment an alternative to removing the illegal material. This remedy would allow Southern Investment to construct a ditch that does not connect the channel to the river at the west end but which coincides with the length and extent of the fill and refuse material that otherwise must be removed.

In respect to the district court's determination concerning the grandfathering of fill as described above, we note that the court considered Southern Investment's argument that this area had a *de minimus* effect. Further, the court noted that a removal order would be a hardship to Southern Investment. Southern Investment presented testimony that the City of Little Rock installed a sewer line in 1967, and at that time dumped materials on the subject property that were identified in the exhibits. The Corps presented evidence in the form of aerial photographs as proof that little of the fill was in the subject area prior to 1970.

Again, we do not find it appropriate to disturb the district court's findings when they are based on a permissible view of the evidence. The district court was best able to assess the value of the evidence presented on behalf of both parties, and we cannot find that the court's decision in that regard was clearly erroneous.

Next, the Corps challenges the district court's suggestion to Southern Investment of an alternative remedy. The alternative remedy would allow Southern Investment to, (1) install a ditch approximately 150 feet in length along the north bank of the channel to afford drainage from the wetlands into the channel; (2) build a retaining wall above the OHWL to prevent fill material or refuse from discharging into the channel and reaching the river; and (3) clean up the remainder of the fill to improve the appearance of the area.

The Corps' objection to this alternative is that it permits Southern Investment to remove considerably less of the fill that it must otherwise remove under the first option, without conferring an additional benefit on the public. The Corps takes issue with the district court's avoidance of the Corps' suggestion that the ditch should be connected to the river. The purpose served by this connection, according to the Corps, would be the reestablishment of circulation in the backwater channel necessary to revitalize wetland conditions. In its bench ruling, the district court did not address the Corps' suggestion.

■ We must review the district court's alternative remedy under an abuse of discretion standard. *United States v. Cumberland Farms of Connecticut, Inc.*, 826 F.2d 1151, 1164 (1st Cir.1987), *cert. denied* —— U.S. ——, 108 S.Ct. 1016, 98 L.Ed.2d 981 (1988); *United States v. Context–Marks Corp.*, 729 F.2d 1294, 1297 (11th Cir.1984). The restoration plan must

"(1) be designed to confer maximum environmental benefits tempered with a touch of equity; (2) be practical and feasible from an environmental and engineering standpoint; (3) take into consideration the financial resources of defendants; and (4) include consideration of defendants' objections."

*United States v. Robinson*, 570 F.Supp. 1157, 1164 (M.D.Fla.1983).

We have reviewed the testimony offered by Henson pertaining to the district court's alternative remedy. This testimony rose out of a dialogue between the district court and Henson concerning the possibility of placing a pipe under the dam in order to reconnect the channel at the west end to the Arkansas River, while preserving access to the land immediately adjacent to the river. Henson gave his expert opinion that this alternative remedy would be acceptable to the Corps because the connection would re-establish circulation in the backwater channel, thereby revitalizing the wetland conditions. He further testified that the length of the piping could be shortened from roughly 300 feet to 150 feet by digging a ditch.

In interpreting this exchange between the district court and Henson, it is obvious to us that the construction of the ditch absent its connection to the river would be futile in terms of wetlands restoration. We can find no support for Southern Investment's assertion that the district court "could not order any changes to the [western] dam since it existed prior to any Corps' jurisdiction [1968]." The district court did not "order" Southern Investment to implement the alternative remedy. Rather, the option was offered to Southern Investment to choose the alternative over the primary remedy should it see fit.

It is our considered opinion that the alternative remedy must include the utilization of a pipe connection to the river in order to facilitate the necessary restoration of wetlands conditions. This issue is remanded to the district court for disposition in accordance with this finding.

Affirmed in part, remanded in part.