The Honorable Jodie Mahony State Senator 106 West Main, Suite 406 El Dorado, Arkansas 71730
The Honorable Marian D. Owens State Representative P.O. Box 449 Warren, Arkansas 71671
Dear Senator Mahony and Representative Owens:
This is in response to your joint request for an opinion on several questions relating to the ownership and jurisdiction of land in and around "Grand Mere Lake." Specifically, you have indicated that in 1987, the Arkansas State Game and Fish Commission purchased approximately seven thousand acres of land now known as the "Beryl Anthony, Sr. Wildlife Management Area." You note that the "Wildlife Management Area," or "WMA," is located on both sides of the Ouachita River. The lake at issue, "Grand Mere Lake," lies off the channel of the river, but is attached thereto, and is within the boundaries of the WMA. You note that questions have arisen over the ownership of the land which borders the lake and the land which underlies the lake itself. Further questions arise over the jurisdiction as between the Corps of Engineers, the Game and Fish Commission, and the State Land Commissioner. You have posed the following specific questions relating to these facts:
 1) What agency of state or federal government owns the land abutting Grand Mere Lake?
 2) Which agency of state or federal government owns and has jurisdiction over the lake bottom and where is the dividing line between the two? A third possibility exists in that the Commissioner of State Lands might own an area between the high and low water marks.
 3) There are a number of houseboats located in the water. Who has jurisdiction to regulate the presence and conditions under which the houseboats may remain in a permanent position?
I must note that resolution of at least some aspects of the issues you have posed will ultimately require a finding of facts. Questions involving the ownership and jurisdiction of land are almost always inherently factual. This is particularly true with land encompassing water, where issues such as navigability arise. This office is not empowered as a factfinder, and is simply not in a position to make such determinations. I can, however, set out the applicable law on the questions, and answer the portions of your questions not requiring a determination of facts, leaving the factual issues for resolution by a factfinder.
It is my opinion in response to your first question, that in all likelihood, the Game and Fish Commission owns the land "abutting" the lake. I am uncertain, as an initial matter, to exactly what land your question refers. You have indicated that the Game and Fish Commission purchased the land comprising the "Beryl Anthony Sr. WMA," and that Grand Mere Lake is encompassed within the WMA. I assume, therefore, that the Game and Fish Commission holds title, by deed or otherwise, to the land surrounding the lake. It should be noted that the question of a lake's navigability (which is a fact question)[1] could, in many instances, affect ownership of the "lake bottom" as will be more fully discussed in response to your second question. But irrespective of navigability, the riparian owner (in this case the Game and Fish Commission) owns the land surrounding or "abutting" the lake, at least to the high water mark.[2]Hayes v. State, 254 Ark. 680, 496 S.W.2d 372 (1973).
In response to your second question, if the lake is non-navigable, the riparian owner also owns the lake bed. See McGahhey v. McCollum,207 Ark. 180, 179 S.W.2d 661 (1944) (where lake is not navigable, owner of land surrounding the lake owns land underlying lake, but where lake is navigable, owner of surrounding land owns only to high-water mark and land underlying lake belongs to the state). Because your question posits that the Game and Fish Commission owns the land on all sides of the lake, if the lake is non-navigable, the Game and Fish Commission would own the entire bed.[3] If the lake is a navigable body of water, on the other hand, the riparian owner owns only to the high-water mark and the "state" owns the bed in trust for the public. See Hayes, supra. I have found no cases interpreting exactly which state agency or entity holds the land under navigable waters of the state. Presumably this is a issue which can be addressed by statute. There are several statutes relevant to the question. Also relevant in this instance, however, are the provisions of Amendment 35 to the Arkansas Constitution, establishing and empowering the Arkansas Game and Fish Commission.
It is my opinion, after a review of the relevant statutes and Amendment 35, that if the lake at issue is navigable, and the "state" therefore owns the bed, the Arkansas Game and Fish Commission is the agency of state government which "owns" the lake bottom, and has regulatory jurisdiction, where the lake is encompassed within a wildlife management area.[4] (As previously concluded, if the lake is non-navigable, the Game and Fish Commission owns the bed as any riparian owner would.)
There are several statutes which are relevant to the question of ownership or control, as between state agencies, of the beds underlying navigable waters. Of course, as stated previously, the "state" owns the bed in such instances, but the question becomes which state agency holds title, and has jurisdiction over these areas. Sections 22-5-801 to -817(Cum. Supp. 1993) of the Arkansas Code gives the State Land Commissioner the authority to consider applications for, and to grant leases and permits for the taking of sand, gravel, oil, natural gas, casinghead gas, coal and other minerals and timber from the beds of navigable rivers and lakes. See A.C.A. § 22-5-801. This subchapter, however, which was last amended in 1993, exempts from the State Land Commissioner's jurisdiction lands held or managed by the Arkansas Game and Fish Commission. Section 22-5-802 at subsection (c) states that "[t]he Arkansas State Game and Fish Commission shall retain the authority over the issuance of leases for the mineral rights and or permits for the rights to produce and sever minerals from lands held in their name or managed by them." See also §§ 22-5-804(e) and 22-5-812(c).
Another relevant provision is A.C.A. § 22-6-202(b), which was added in 1991. It states that "[t]he Commissioner of State Lands shall have full power and authority to lease or grant submerged lands and the Commissioner shall promulgate rules and regulations as may be necessary to effectively carry out the provisions of this section, and upon adoption, such rules and regulations shall have the full force and effect of law." "Submerged lands" are defined at § 22-6-201(d), which states that "[i]t is . . . the intent of this subchapter to establish the policy that all submerged lands following the navigable waterways of this state shall remain in the state domain. `Submerged lands' shall be those lands found at and below the line of ordinary high-water and shall include but not be limited to the beds, channels, chutes, and adjoining areas of rivers, lakes, and streams." This subchapter does not exempt lands held by the Game and Fish Commission for wildlife preservation purposes. It is my opinion, nonetheless, that the State Land Commissioner does not have the authority to lease or otherwise assert jurisdiction over the beds of navigable lakes situated within the boundaries of a state wildlife management area.
Clearly, if the purpose of the lease or grant is to remove minerals or timber, A.C.A. § 22-5-801 et seq. provides that the Game and Fish Commission retains control and jurisdiction over any such lease. If the purpose of the lease or grant is for other than these purposes, then presumably this subchapter does not apply, and the more general provisions of A.C.A. § 22-6-202(b), allowing the State Land Commissioner to lease or grant submerged lands, would apply. It is my opinion, nonetheless, that A.C.A. § 22-6-202(b) would not be interpreted so as to give the State Land Commissioner authority to lease or grant submerged lands located within a Game and Fish Commission wildlife management area. This conclusion is buttressed not only by the expression of legislative intent in § 22-5-801 et seq. excluding the severing of minerals from Game and Fish Commission lands from the Land Commissioner's jurisdiction, but is in all likelihood mandated by the provisions of Amendment 35. That amendment provides in Section 1, in part, that:
 The control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission. . . . [Emphasis added.]
In my opinion the legislature could not constitutionally give the State Land Commissioner the authority to lease submerged lands underlying lakes contained within Game and Fish Commission wildlife management areas. The Game and Fish Commission is given jurisdiction over such areas in the constitution, and has, in fact, established extensive rules and regulations governing such areas. See Game and Fish Commission Code, Sections 20, 21 and 22. The Commission has also established regulations specifically relating to Commission owned lakes. See Game and Fish Commission Code, Section 33, and "Policies on Land Use Around Arkansas Game and Fish Commission Lakes" (updated 1992). These regulations have the force of law. Dennis v. State, 26 Ark. App. 294, 764 S.W.2d 466
(1989).
In response to your second question therefore, it is my opinion that the Arkansas Game and Fish Commission in all likelihood "owns" and has jurisdiction over the bed of Grand Mere Lake. In response to the second part of your second question, the "dividing line" between the lake bottom and the surrounding land is the high-water mark (see note 2, supra), but in my opinion, the Game and Fish Commission, as the riparian land owner, also owns the land abutting the lake, to the high-water mark. In response to the third part of your second question, I have found no authority for a separate or different treatment of the land lying between the low and high water marks. In some states the low-water mark of navigable waters is the dividing line between riparian and state ownership. See, e.g.,U.S. Gypsum Co. v. Uhlhorn, 232 F. Supp. 994 (E.D. Ark. 1964), cert.denied, 385 U.S. 1026 (1967) (Tennessee); and Polack v. Steinke,100 Ark. 28, 139 S.W. 538 (1911) (Missouri). This is not the law in Arkansas. In Arkansas, the state owns the land below the high-water mark of navigable bodies of water. In this instance I have concluded, if the lake is navigable, that the Game and Fish Commission is the "state" agency with such ownership and control. I can find no basis for distinguishing state ownership of the land lying between the high and low water marks, especially where, as here, the Game and Fish Commission also owns the surrounding land.
Your third and final question inquires as to which agency has jurisdiction to regulate the presence of houseboats on Grand Mere Lake. In my opinion, consistent with what has been stated above, the Game and Fish Commission possesses this jurisdiction, which it may exercise concurrently with the Corps of Engineers. See notes 3 and 4, supra, andgenerally North Shore Boom Driving Co. v. Nicomen Boom Co.,212 U.S. 406 (1909).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] For a discussion of the test of navigability, see Ops. Att'y Gen.92-193 and 89-103, copies enclosed. It should also be noted that at least some lakes attached to the Ouachita River have been held to be navigable. See, e.g., Land and Lake Tours, Inc., v. Lewis, 738 F.2d. 961 (8th Cir. 1984), cert. denied, 469 U.S. 1038 (holding Lake Hamilton "navigable" because the part of the Ouachita River which was obstructed to create the lake was navigable). But see Dunham v. Demaine,559 F. Supp. 224 (E.D. Ark. 1983) (Lake Hamilton not navigable).
[2] For a discussion of the definition of "high water mark" see Op. Att'y Gen. 92-193.
[3] It should be noted, however, that irrespective of ownership, and apparently irrespective of traditional definitions of navigability, the Corps of Engineers has some jurisdiction over the land abutting certain lakes under the "commerce clause" and the "Federal Water Pollution Control Act" (commonly referred to as the "Clean Water Act"). See33 U.S.C. § 1344. This jurisdiction entails the authority to regulate the discharge of dredged or fill material into lakes and the surrounding land, even above the high-water mark if the area constitutes "wetlands."See U.S. v. Southern Inv. Co., 876 F.2d 606 (8th Cir. 1989).
[4] Again, the United States Corps of Engineers may have some jurisdiction over the bed of the lake, most often pursuant to its authority under the Clean Water Act, cited above (see n. 3, supra) or through the provisions of the "Rivers and Harbors Act of 1899" (see33 U.S.C. § 403) (prohibiting obstructions and alterations of navigable waters without authorization of the Corps).