**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY;
FRIENDS OF FAWNSKIN,
          *Plaintiffs-Appellees,*

     v.

MARINA POINT DEVELOPMENT CO.;
OKON DEVELOPMENT CO.; OKO
INVESTMENTS, INC.; NORTHSHORE
DEVELOPMENT ASSOCIATES, L.P.,
e/s/a NORTH SHORE DEVELOPMENT
ASSOCIATES, L.P.; SITE
DESIGN ASSOCIATES, INC.; KEN
DISCENZA; VDLP MARINA POINT;
VENWEST MARINA POINT, INC., e/s/a
VENTURE WEST INC.; IRVING
OKOVITA,
          *Defendants-Appellants.*

No. 06-56193

D.C. No.
CV-04-07036-R

CENTER FOR BIOLOGICAL DIVERSITY;
FRIENDS OF FAWNSKIN,
                    *Plaintiffs-Appellees,*

                    v.

MARINA POINT DEVELOPMENT CO.;
OKON DEVELOPMENT CO.; OKO
INVESTMENTS, INC.; NORTHSHORE
DEVELOPMENT ASSOCIATES, L.P.,
e/s/a NORTH SHORE DEVELOPMENT
ASSOCIATES, L.P.; SITE
DESIGN ASSOCIATES, INC.; KEN
DISCENZA; VDLP MARINA POINT;
VENWEST MARINA POINT, INC., e/s/a
VENTURE WEST INC.; IRVING
OKOVITA,
                    *Defendants-Appellants.*

No. 07-55243
D.C. No.
CV-04-07036-R

CENTER FOR BIOLOGICAL DIVERSITY;
FRIENDS OF FAWNSKIN,
                    *Plaintiffs-Appellees,*

                    v.

MARINA POINT DEVELOPMENT CO.;
OKON DEVELOPMENT CO.; OKO
INVESTMENTS, INC.; NORTHSHORE
DEVELOPMENT ASSOCIATES, L.P.,
e/s/a NORTH SHORE DEVELOPMENT
ASSOCIATES, L.P.; SITE
DESIGN ASSOCIATES, INC.; KEN
DISCENZA; VDLP MARINA POINT;
VENWEST MARINA POINT, INC., e/s/a
VENTURE WEST INC.; IRVING
OKOVITA,
                    *Defendants-Appellants.*

No. 07-56574

D.C. No.
CV-04-07036-R-RZ

ORDER
AMENDING
OPINION AND
DISMISSING
PETITION FOR
REHEARING AND
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
July 14, 2008—Pasadena, California

Filed August 6, 2008
Amended March 27, 2009

Before: Ferdinand F. Fernandez, Pamela Ann Rymer, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Fernandez;
Concurrence by Judge Rymer;
Partial Concurrence and Partial Dissent by Judge Kleinfeld

**COUNSEL**

Robert D. Crockett, Latham & Watkins LLP, Los Angeles, California, for the defendants-appellants.

Bernice Conn, Robins, Kaplan, Miller & Ciresi L.L.P., Los Angeles, California, for the plaintiffs-appellees.

---

**ORDER**

Upon reconsideration of the attorney fee issues, we amend our Opinion filed on August 6, 2008, and commencing at slip op. 9919[1] as follows:

(1)　We revoke the last sentence of the introductory paragraph, which appears at slip op. 9925 (1029) and substitute the following in its place: "We reverse the contempt order and vacate the order awarding attorney fees."

(2)　We revoke the last sentence of the first paragraph of Part I at slip op. 9938 (1036) and substitute the following in its place: "As explained below, segregation is now required because the portion of the award based upon the CWA must fall, while the portion based upon the ESA must stand."

(3)　We revoke the whole of Part B which commences at slip op. 9938 (1036), including the footnotes, and substitute the following in its place:

The ESA provides for an award of attorney fees "whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). While that is not the typical prevailing party language, it is apparent that

---

[1]This case is published as *Center for Biological Diversity v. Marina Point Development Co.*, 535 F.3d 1026 (9th Cir. 2008), and we will hereafter put page references to the published Opinion in parentheses.

it must be taken to mean and be limited to an award of fees to parties who prevail. *See Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 693-94, 103 S. Ct. 3274, 3282, 77 L. Ed. 2d 938 (1983) (in a Clean Air Act case, with the same language as that in the ESA, absent "some degree of success on the merits" an award of attorney fees is not "appropriate."). Here, it could be argued that the Center has not prevailed because the judgment of the district court in its favor must be vacated as moot.

However, it cannot be gainsaid that until the date of delisting, the judgment of the district court had the effect of giving relief to the Center and protecting the bald eagle. In short, the Center obtained a substantial and direct benefit from that judgment. It is also plain that mootness alone does not preclude an award of attorneys fees. *See Richard S. v. Dep't of Developmental Servs. of State of Cal.*, 317 F.3d 1080, 1088-89 (9th Cir. 2003).

In addition, the weight of authority strongly indicates that when a matter becomes moot on appeal, the court will not, and cannot, review the merits of the underlying dispute for the purpose of determining whether an award of attorney fees was proper. That is to say, although it can consider whether the plaintiff prevailed at all, it cannot ask whether the district court's underlying decision on the merits was erroneous. *See Diamond v. Charles*, 476 U.S. 54, 69-72, 106 S. Ct. 1697, 1707-08, 90 L. Ed. 2d 48 (1985) (holding that where plaintiff prevailed but case became moot on appeal, there was no jurisdiction to consider the award of attorney fees against the appealing intervenor); *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196-97 (9th Cir. 2007) (stating that if plaintiffs obtain direct benefit

before case becomes moot, attorney fees are proper); *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996) (stating that "[t]he existence of an attorneys' fees claim does not resuscitate an otherwise moot controversy."); *Dahlem ex rel. Dahlem v. Bd. of Educ.*, 901 F.2d 1508, 1512 (10th Cir. 1990) (stating that once case becomes moot, review does not involve considering whether district court correctly decided the merits); *Palmer v. City of Chicago*, 806 F.2d 1316, 1321 (7th Cir. 1986) (assuming, but not deciding, that a plaintiff who obtains some relief can obtain fees, even if the case becomes moot.); *Bishop v. Comm. on Prof'l Ethics and Conduct*, 686 F.2d 1278, 1290 (8th Cir. 1982) (stating that where case has become moot after party obtains relief, the court will decide if party prevailed "without regard to whether we think the district court's decision on the underlying merits is correct."); *United States v. Ford*, 650 F.2d 1141, 1144 n.1 (9th Cir. 1981) (stating that "there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fee question."); *Williams v. Alioto*, 625 F.2d 845, 847-48 (9th Cir. 1980) (holding that where plaintiffs obtained some relief before case became moot, on appeal, attorney fees were proper); *Curtis v. Taylor*, 625 F.2d 645, 648-49 (5th Cir. 1980) (stating "a claim for attorney's fees . . . does not salvage an otherwise moot case."); *Bagby v. Beal*, 606 F.2d 411, 414 (3rd Cir. 1979) (declaring that when case had become moot after plaintiff prevailed at district court level, appellate court could not review the merits of the case to decide if fees should have been awarded to plaintiff, that is, the court would not do indirectly what it could not do directly).

While the result of eschewing review of the merits of a decision that has led to a substantial award of

attorney fees may be somewhat disquieting at times, we see no ultimately principled and persuasive reason to deviate from the above line of authority. We will, instead, adhere to the wide agreement by appellate judges that they should not undertake to delve into the details of a district court's resolution of a controversy that has since become moot in order to decide the ancillary question of fees.

All of the above being true, the portion of the attorney fee award based upon the ESA still stands.

(4) We revoke the whole of Part II, which commences at slip op. 9940 (1037) and substitute the following in its place:

## II. Contempt

As we see it, the contempt order issued by the district court was based upon a claimed violation of the terms of the district court's CWA judgment of August 21, 2006, but that judgment must fall for lack of jurisdiction. Thus, whether the contempt order expanded or merely explicated the judgment,[15] that order must inexorably fall along with the judgment itself.[16]

(5) We revoke the whole of the Conclusion, which commences at slip op. 9941 (1038) and substitute the following in its place:

---

[15] *See A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098-99 (9th Cir. 2002); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001).

[16] Were we required to consider the merits of that order, it would necessarily have to be set aside. It is plain that no development on the project site took place. And it is equally plain that Marina Point did not fail to take measures directed by the Corps. In short, Marina Point cannot be said to have violated the terms of the judgment at all, much less to have done so contemptuously. That would also require setting aside the order, to the extent, if any, that it was based, in part, on the ESA.

The district court determined that Marina Point had violated the CWA and had either violated or would violate the ESA. *See Center I*, 434 F. Supp. 2d at 795-98. However, because it lacked jurisdiction over the CWA claims and because the ESA claims have become moot, we vacate its judgment and remand with directions to dismiss for lack of jurisdiction.

Concomitantly, we reverse the contempt order. We also vacate the award of attorney fees to the extent that it is based upon the CWA and remand so that the district court can determine what portion of the attorney fee award was based upon the ESA and reenter judgment as to that portion only.

Judgment After Trial on the merits (No. 06-56193) VACATED and REMANDED with instructions to dismiss for mootness (ESA) and lack of jurisdiction (CWA).[17] Order of Contempt (No. 07-56574) REVERSED. Order Awarding Attorneys Fees (No. 07-55243) VACATED and REMANDED.

The pending petition for rehearing and rehearing en banc is DISMISSED as moot. The parties may file new petitions as to the amended opinion for rehearing and rehearing en banc in accordance with the Federal Rules of Appellate Procedure.

---

## OPINION

FERNANDEZ, Circuit Judge:

Marina Point Development Associates, Okon Development Co., Oko Investments, Inc., Northshore Development Asso-

---

[17]The district court's opinion is also vacated. *See Center I*, 434 F. Supp. 2d at 789.

ciates, L.P., Irving Okovita, Site Design Associates, Inc., Ken Discenza, VDLP Marina Point L.P. and Venwest Marina Point, Inc. (collectively "Marina Point") appeal the district court's judgment on the merits in favor of Center for Biological Diversity and Friends of Fawnskin (collectively "the Center") on their claims under the Clean Water Act (CWA),[1] and under the Endangered Species Act (ESA).[2] Marina Point also appeals the district court's order awarding attorney fees to the Center and the district court's contempt order. We vacate the district court's judgment on the merits and instruct it to dismiss for lack of jurisdiction. We reverse the contempt order and vacate the order awarding attorney fees.

## BACKGROUND

Marina Point's 12.51 acre development project site is located on the north shore of Big Bear Lake and the east shore of Grout Bay in the San Bernardino Mountains. The property extends from the edge of the trees to the lake. The land area, known as "Cluster Pines," had functioned as a tavern, recreational vehicle park, campground, and licensed commercial marina from the early 1950's until 2001. Marina Point acquired the property in 1989 in order to develop a residential condominium project upon it.

After acquiring the property, Marina Point began securing permits. The United States Army Corps of Engineers (Corps) solicited public comment, and ultimately concluded that the planned development could go forward. The Corps stated that the United States Fish and Wildlife Service (FWS) had ultimately determined that the upland portion of the site was not a suitable bald eagle habitat, and that a consultation pursuant to 16 U.S.C. § 1536 was not required. On September 10,

---

[1] The CWA is codified at 33 U.S.C. §§ 1251-1387. More particularly, the claims were brought under 33 U.S.C. §§ 1311, 1342, and 1344.

[2] The ESA is codified at 16 U.S.C. §§ 1531-1544. More particularly, the claims were brought under 16 U.S.C. §§ 1538 and 1540.

1991, the Corps granted a permit to Marina Point which authorized it to strengthen the existing shoreline. *See* 33 U.S.C. § 1344.

The permit authorized Marina Point to dredge the adjacent shoreline and the interior of the existing marina, and to use the dredged material as fill for building pads on the land. Marina Point was forbidden, however, from placing rip-rap[3] at elevations below lake bottom contours, from depositing sand below the ordinary high water mark, and from transferring fill or structures to neighboring wetlands. In order to protect bald eagles' seasonal behavioral habits, it was also barred from working during the winter months. Besides the permit from the Corps, Marina Point secured permits from the County of San Bernardino, the California Department of Fish and Game, and Big Bear Municipal Water District. In addition, the California Regional Water Quality Control Board issued a water discharge requirements order.

Work began in May 2002, but Marina Point's permit from the Corps expired on September 10, 2002, after several extensions. Marina Point graded the land area before the permit expired. On October 7, 2002, Marina Point's contractor also used a grader to remove trees on the land. Moreover, the Corps allowed Marina Point to proceed with dredging without a permit as long as that did not result in more than "incidental fallback" of soil within the Corps' jurisdiction, but the Corps disallowed any pushing or pulling of materials along the lake bed.

Work resumed at the site in June of 2003 and went on until about July 23, 2003, when the Corps issued a Cease and Desist Order to Marina Point. The Corps' stated reasons for the order were that Marina Point's use of a dragline bucket, rather than a clamshell dredge, caused more than incidental

---

[3]As used here, rip-rap is rock; it is used to protect shorelines against erosion.

fallback of soil, and that the contractor had been temporarily stockpiling material below the ordinary high water mark.

In September 2003, Marina Point requested interim approval to resume work. The Corps then issued an Initial Corrective Measure Order (ICMO) on October 16, 2003, which required Marina Point to complete specific remedial actions by December 1, 2003. That deadline was extended to December 24, 2003, because of unforeseen difficulties, such as a forest fire in the area.

In the meantime, the Center had sent a number of notices of intent to commence a citizen's action against Marina Point.[4] The Center then filed this action on April 7, 2004.

The district court denied Marina Point's motion to dismiss for lack of subject matter jurisdiction. The case then proceeded to trial, and on June 12, 2006, the district court issued an opinion[5] in which it determined that Marina Point had violated the CWA and the ESA. Its ensuing judgment on August 21, 2006, permanently enjoined Marina Point from any development on the site without the court's prior authorization, directed Marina Point to follow any remedial orders from the Corps, and imposed a statutory penalty upon it. Marina Point appealed on August 22, 2006.

Thereafter, the district court awarded attorney fees to the Center as the prevailing party under the CWA and the ESA. Marina Point appealed that ruling on February 15, 2007.

Still later, on November 7, 2007, the district court determined that Marina Point was in contempt and issued various

---

[4]Notices were issued on June 30, 2003, July 17, 2003, August 8, 2003, and December 1, 2003.

[5]*Ctr. for Biological Diversity v. Marina Point Dev. Assocs.*, 434 F. Supp. 2d 789 (C.D. Cal. 2006) (*Center I*).

orders as a result. Marina Point appealed that decision on November 19, 2007.

## STANDARD OF REVIEW

We review issues of the district court's subject matter jurisdiction de novo. *See Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1090 (9th Cir. 2008). We also review de novo the question of whether the Center's notice under the CWA was adequate. *See Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 995-96 (9th Cir. 2000).

## JURISDICTION

At the outset, we must consider whether there was federal jurisdiction over this dispute when the complaint was filed, and whether jurisdiction still remains. For the reasons discussed below, the answer is no.

I. Clean Water Act.

[1] In general, actions can be brought by private persons and entities for the purpose of enforcing many of the provisions of the CWA. *See* 33 U.S.C. § 1365(a). That is usually referred to as the citizen suit provision. However, before an action is commenced, the citizen must give a 60-day notice of intent to sue. *Id.* § 1365(b)(1)(A). In fact, absent that notice, the action is prohibited. *Id.*

[2] The notice serves important public purposes; this kind of litigation is not like a mere private dispute. That is underscored by the fact that the notice must be given not only to the alleged violator,[6] but also to the Administrator,[7] and to the

---

[6]33 U.S.C. § 1365(b)(1)(A)(iii).

[7]*Id.* § 1365(b)(1)(A)(i). The Administrator is the Administrator of the Environmental Protection Agency (EPA). 33 U.S.C. § 1251(d).

State where the alleged violation occurred.[8] The Supreme Court has explicated the purpose behind the requirement of notice in this kind of litigation. As it has pointed out:

> [T]he legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits. Requiring citizens to comply with the notice and delay requirements serves this congressional goal in two ways. First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits. . . . Second, notice gives the alleged violator "an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit." This policy would be frustrated if citizens could immediately bring suit without involving federal or state enforcement agencies. Giving full effect to the words of the statute preserves the compromise struck by Congress.

*Hallstrom v. Tillamook County*, 493 U.S. 20, 29, 110 S. Ct. 304, 310, 107 L. Ed. 2d 237 (1989) (citations omitted). That has special relevance here because, as we will explain further, this case is a perfect example of speedy government enforcement; action by the Corps which, in large measure, obviated the need for a citizen suit regarding Marina Point's alleged violations.

**[3]** Moreover, the giving of a 60-day notice is not simply a desideratum; it is a jurisdictional necessity. *See Waterkeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 916 (9th Cir. 2004); *Natural Res. Def. Council*, 236 F.3d at 995. As the Supreme Court has put it: "Under a literal reading of the statute, compliance with the 60-day notice provision is

---

[8] 33 U.S.C. § 1365(b)(1)(A)(ii).

a mandatory, not optional, condition precedent for suit." *Hallstrom*, 493 U.S. at 26, 110 S. Ct. at 309. And the literal reading is what controls. When a party does not fulfill that threshold requirement, "the district court must dismiss the action as barred by the terms of the statute." *Id.* at 33, 110 S. Ct. at 312; *see also Waterkeepers*, 375 F.3d at 916. That is to say, the notice is not just an annoying piece of paper intended as a stumbling block for people who want to sue; it is purposive in nature and the purpose is to accomplish corrections where needed without the necessity of a citizen action. As the Supreme Court has said in the similar context of claims for past violations:

> It follows logically that the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit. If we assume, as respondents urge, that citizen suits may target wholly past violations, the requirement of notice to the alleged violator becomes gratuitous. Indeed, respondents, in propounding their interpretation of the Act, can think of no reason for Congress to require such notice other than that "it seemed right" to inform an alleged violator that it was about to be sued.

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60, 108 S. Ct. 376, 382-83, 98 L. Ed. 2d 306 (1987). Here, too, if a citizen suit were brought when correction had already been undertaken at the behest of a governmental agency, the notice would become gratuitous. But, as the Court went on to say: "citizen suits are proper only 'if the Federal, State, and local agencies fail to exercise their enforcement responsibility.'" *Id.* at 60, 108 S. Ct. at 383 (citation omitted).

[4] We must, therefore, keep those overarching public purposes in mind as we approach the controversy before us. To

accomplish them, the notice must be sufficient in itself and, perforce, if the desired change has been properly delineated and has been accomplished, that, too, obviates the need or purpose of a citizen suit. That does not exactly say just what a sufficiently detailed notice might be, but we have guidance in that area also.

We start with the requirements adopted by the EPA. Those are as follows:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). It is from that specific and clear statement that our later cases have proceeded.

We have sometimes been slightly forgiving to plaintiffs in this area, but even at our most lenient we have never abandoned the requirement that there be a true notice that tells a target precisely what it allegedly did wrong, and when. The target is not required to play a guessing game in that respect. In one case, we determined that where the difficulty was a kind of negative — the failure to prepare a plan to avoid pollution — a specific date of wrongdoing could not be given because there was no specific date. *Natural Res. Def. Council*, 236 F.3d at 996. We chose not to demand the impossible. Thus, the notice sufficed.

In two later cases in 2002, we also relaxed to some extent. In one of the cases, the plaintiff's notice set forth a series of

twelve specific violations on specific dates, but the complaint included numerous other violations within the same time frame. *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951-52 (9th Cir. 2002). The defendant complained about the added dates, but we said that the notice certainly alerted the defendant to what it was doing wrong and the inclusion of specific dates was, under the circumstances, enough to allow an action regarding discharges on other dates at or about the same time and of the same ilk as those listed. *Id.* at 953. As we put it, "[b]ased on the fact that the violations originated from the same source, were of the same nature, and were easily identifiable, we find that [the plaintiffs'] notice was adequate." *Id.* The other case presented the same kind of issue. There, fourteen dates of alleged wrongdoing were listed in the notice, and the notice also stated that while all dates were not available to the plaintiff, the wrongdoing occurred on each date that ships were loaded at the defendant's facility. *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002). We found that the detail was sufficient under the circumstances because from the specifics given, the defendants could readily ascertain "the nature of the alleged violations, as well as the likely dates of those violations." *Id.* at 1159.

We followed the same general approach in a later case where the defendant was accused in a detailed ten-page letter of improper discharges during each and every rain event of a certain intensity, and the days of that rain event intensity were listed. *See Waterkeepers N. Cal.*, 375 F.3d at 917. We declared that to be sufficient detail. *Id.* at 917-18.

On the other hand, when a notice told the defendant that it had committed one specific violation, the defendant was not "required to speculate as to all possible attacks . . . that might be added to a citizen suit" at a later time. *ONRC Action v. Columbia Plywood, Inc.*, 286 F.3d 1137, 1143 (9th Cir. 2002). We found that the notice was insufficient, except as to timeliness, and that the claim was in error. We then explained:

"[b]ecause timeliness was the sole challenge raised in the notice, it was reasonable to conclude that no action in response to ONRC's 60-day notice was required." *Id.* Also, echoing the Supreme Court's concerns, we went on to state:

> Had ONRC's notice specified its other theories, either Oregon or the EPA might well have decided that those theories had sufficient merit to call for agency action. Were we to exercise jurisdiction over such claims when they were not disclosed by the citizen suit notice, we would usurp the right of the applicable governmental agencies to evaluate and act upon the merits of the claims prior to judicial review.

*Id.* at 1144.

Earlier on, when faced with a notice that did not list all of the complaining parties, we declared that for purposes of an action by those not listed, the notice was fatally insufficient. *Wash. Trout v. McCain Foods, Inc.*, 45 F.3d 1351, 1354-55 (9th Cir. 1995). We did so despite an assertion by the plaintiffs that the error was technical and we should not be overly strict. *Id.* at 1354. We rejected that notion. *Id.* By the way, the notice in that case also had a deficiency regarding dates, but we did not address that. *See id.* at 1352.

In short, the requirements set forth in 40 C.F.R. § 135.3(a) are not to be looked upon as mere technicalities to be accepted with cold reserve and embraced with velleity. They are to be taken seriously as a means of carrying out important public policies. Our deviations from their precise language have been minor.

**[5]** When those authorities and their principles are used as a yardstick, it is apparent that the notices in this case were not sufficient to support district court jurisdiction. An analysis of the notices will explain why that is so. The first of the notices

on June 30, 2003, declared that "Section 404 of the CWA"[9] was being violated by activities that began June 17, 2003, which activities were placing "enormous amounts of fill" into the lake and were accompanied by grading below the ordinary high water mark. The notice did not mention any claims under § 402 of the CWA,[10] nor did it give any detail whatsoever regarding just what "wetlands" were allegedly being affected or how.[11] It also gave no other specific dates. The second of the notices, dated July 17, 2003, is of the same ilk. It gives little more detail about the activities regarding the lake itself and no more detail regarding wetlands or § 402. Those notices are questionable regarding § 404 violations and insufficient regarding wetlands and any claimed § 402 violations.[12]

[6] What is of even more significance, however, is that long before any action was filed and, in fact, before 60 days had gone by, the Corps issued its cease and desist order on July 23, 2003, and all activity by Marina Point regarding the lake stopped as it had to. That, in fact, is reflected in the Center's third notice, on August 8, 2003, wherein it stated that the activities it complained of occurred each day from June 17, 2003, through July 25, 2003.

The third notice then goes on to claim violations in language even less descriptive than that used in the prior notices. It refers only to piles of material that were causing discharges below the ordinary high water mark of the lake, and declares

---

[9] 33 U.S.C. § 1344.

[10] 33 U.S.C. § 1342.

[11] That is especially problematic here because it is doubtful that Marina Point's own land was itself wetlands at all. *See, e.g.*, 33 C.F.R. § 330.3; *United States v. S. Inv. Co.*, 876 F.2d 606, 613 (8th Cir. 1989). The Corps did not (and does not) think so. Marina Point could hardly have guessed at what the Center was speaking about.

[12] It is interesting to note that even in its complaint and in the ultimate pretrial conference order in this action in the district court, there is no mention of a § 402 claim.

that the situation could be made worse should it rain. As we see it, that level of generality, again, is not really compatible with the purposes of the notice requirements under the CWA.

**[7]** But, even if it were sufficient in that regard, here again the Corps stepped in to obviate and ameliorate any problems. Just slightly over 60 days later and before commencement of this action, the Corps issued its October 16, 2003, ICMO authorizing and directing Marina Point to perform and complete a number of corrective measures by December 1, 2003, for the purpose of protecting the lake from the kinds of problems alluded to by the August 8, 2003, notice. It is also notable that although the Corps' ICMO was issued nine days after the 60 days had expired, Marina Point had applied for permission to undertake that work on September 25, 2003, which was before the 60 days had run. Of course, Marina Point could not have been expected to actually begin correcting perceived § 404 problems regarding the lake without obtaining permission from the Corps. In short, as weak as it was, the notice had done its job, if, indeed, the job was not being done without the notice.

That leaves the December 1, 2003, notice, which is, if anything, even less informative and helpful than the earlier notices. Principally, it asserts that Marina Point was going forward without the coverage of the ICMO because that document said that work was to cease by December 1, 2003. However, the Center was in error because, due to problems that had developed, the Corps, after consultation with FWS, extended the date to December 24, 2003. As it was, the work ceased by December 17, 2003. It is difficult to see what Marina Point was supposed to do about that portion of the notice. Probably nothing. *See Columbia Plywood*, 286 F.3d at 1143. Beyond that, the Center indicated that it could not really tell if the work was proceeding pursuant to the terms of the ICMO. That, too, was hardly the kind of notice that the CWA contemplates.

**[8]** In fine, the notices were insufficient at their inception regarding wetlands and possible § 402 violations, and to the extent that they were sufficient, if barely so, as to possible § 404 violations, their efficiency was limited by prompt Corps and Marina Point action. That is to say, in light of the defects in the notices, and in light of the fact that the Corps and Marina Point did act to cease the activities that the Center claimed were wrongful and even acted to effect ongoing repairs for any problems caused by past activities, the district court did not have jurisdiction to hear the CWA action. It should have dismissed the action at the outset. Thus, in this respect the district court's judgment must fall for lack of jurisdiction, and must be vacated.

## II. Endangered Species Act

Plaintiffs were also required to give notice before bringing an action under the ESA. *See* 16 U.S.C. § 1540(g)(2). There is no claim that the notice was not sufficient in that respect, and it does appear to be proper. However, there is a different problem here — mootness.

**[9]** The ESA allows a citizen suit for the purpose of obtaining injunctive relief only. *Id.* at (g)(1)(A). Of course, that is forward looking, and is intended to prevent a defendant from taking an endangered or threatened species. *See id.* § 1538(a)(1)(B); 50 C.F.R. §17.31. That means that a person may not harass or harm a listed species. *See* 16 U.S.C. § 1532(19). Here, the claim was that Marina Point's activities and planned project would harass bald eagles by disrupting their "normal behavioral patterns." *See* 50 C.F.R. § 17.3.

**[10]** The problem is that less than a year after the district court's judgment was issued[13] and, of course, while this case was still on appeal, the FWS delisted the bald eagle.[14] There-

---

[13]The judgment was entered August 21, 2006.

[14]*See* Endangered & Threatened Wildlife & Plants; Removing the Bald Eagle in the Lower 48 States From the List of Endangered & Threatened Wildlife, 72 Fed. Reg. 37,346 (July 9, 2007).

fore, whatever might have been the case previously, Marina Point cannot violate the ESA regarding the bald eagle, regardless of any decision we render here.

**[11]** As we explained in *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933 (9th Cir. 2008) (citations omitted):

> "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." "A claim is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The basic question is whether there exists a present controversy as to which effective relief can be granted."

Because the bald eagle has been delisted, no present controversy can remain.

In *Humane Society of the United States v. Kempthorne*, 527 F.3d 181 (D.C. Cir. 2008), the Court of Appeals for the District of Columbia Circuit was faced with a similar situation. In that case, while litigation regarding protection for the gray wolf was on appeal, the wolf was removed from the endangered species list. *Id.* at 182. That being so, the parties agreed that the case had necessarily become moot, and the court accepted that agreement. *Id.* The specific reason for that was not explicated but, no doubt, it appeared obvious to all concerned that there was no further work to be served by an injunction. *Cf. Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 837 n.4 (9th Cir. 2001) (stating that where suit brought to force action regarding a frog, once the frog was listed the case became moot).

The same appears here. Now that the bald eagle has been delisted, nothing we decide can properly give the Center the relief it sought. If the district court erred, the injunction must

fall, but if the district court was correct, the injunction must still fall because no activities by Marina Point could constitute a take within the meaning of the ESA. In fact, in a letter to this court, the Center has conceded mootness.

**[12]** Thus, there is no further jurisdiction to proceed, and the district court's judgment under the ESA must be vacated.

### OTHER ISSUES

#### I.  Attorney Fees

The district court awarded attorney fees to the Center and against Marina Point on both the CWA and the ESA claims. It did not segregate the two. As explained below, segregation is now required because the portion of the award based upon the CWA must fall, while the portion based upon the ESA must stand.

#### A.  CWA

**[13]** The CWA provides for an award of attorney fees "to any prevailing or substantially prevailing party" when the court deems that to be appropriate. 33 U.S.C. § 1365(d). As we have already discussed, the district court was without subject matter jurisdiction over the CWA claim. Therefore, the award of fees must fall to the extent that it is based upon that claim.

#### B.  ESA

The ESA provides for an award of attorney fees "whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). While that is not the typical prevailing party language, it is apparent that it must be taken to mean and be limited to an award of fees to parties who prevail. *See Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999); *see also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 693-94,

103 S. Ct. 3274, 3282, 77 L. Ed. 2d 938 (1983) (in a Clean Air Act case, with the same language as that in the ESA, absent "some degree of success on the merits" an award of attorney fees is not "appropriate."). Here, it could be argued that the Center has not prevailed because the judgment of the district court in its favor must be vacated as moot.

**[14]** However, it cannot be gainsaid that until the date of delisting, the judgment of the district court had the effect of giving relief to the Center and protecting the bald eagle. In short, the Center obtained a substantial and direct benefit from that judgment. It is also plain that mootness alone does not preclude an award of attorneys fees. *See Richard S. v. Dep't of Developmental Servs. of State of Cal.*, 317 F.3d 1080, 1088-89 (9th Cir. 2003).

In addition, the weight of authority strongly indicates that when a matter becomes moot on appeal, the court will not, and cannot, review the merits of the underlying dispute for the purpose of determining whether an award of attorney fees was proper. That is to say, although it can consider whether the plaintiff prevailed at all, it cannot ask whether the district court's underlying decision on the merits was erroneous. *See Diamond v. Charles*, 476 U.S. 54, 69-72, 106 S. Ct. 1697, 1707-08, 90 L. Ed. 2d 48 (1985) (holding that where plaintiff prevailed but case became moot on appeal, there was no jurisdiction to consider the award of attorney fees against the appealing intervenor); *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1196- 97 (9th Cir. 2007) (stating that if plaintiffs obtain direct benefit before case becomes moot, attorney fees are proper); *Cammermeyer v. Perry*, 97 F.3d 1235, 1238 (9th Cir. 1996) (stating that "[t]he existence of an attorneys' fees claim does not resuscitate an otherwise moot controversy."); *Dahlem ex rel. Dahlem v. Bd. of Educ.*, 901 F.2d 1508, 1512 (10th Cir. 1990) (stating that once case becomes moot, review does not involve considering whether district court correctly decided the merits); *Palmer v. City of Chicago*, 806 F.2d 1316, 1321 (7th Cir. 1986) (assuming, but not deciding,

that a plaintiff who obtains some relief can obtain fees, even if the case becomes moot.); *Bishop v. Comm. on Prof'l Ethics and Conduct*, 686 F.2d 1278, 1290 (8th Cir. 1982) (stating that where case has become moot after party obtains relief, the court will decide if party prevailed "without regard to whether we think the district court's decision on the underlying merits is correct."); *United States v. Ford*, 650 F.2d 1141, 1144 n.1 (9th Cir. 1981) (stating that "there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fee question."); *Williams v. Alioto*, 625 F.2d 845, 847-48 (9th Cir. 1980) (holding that where plaintiffs obtained some relief before case became moot, on appeal, attorney fees were proper); *Curtis v. Taylor*, 625 F.2d 645, 648-49 (5th Cir. 1980) (stating "a claim for attorney's fees . . . does not salvage an otherwise moot case."); *Bagby v. Beal*, 606 F.2d 411, 414 (3rd Cir. 1979) (declaring that when case had become moot after plaintiff prevailed at district court level, appellate court could not review the merits of the case to decide if fees should have been awarded to plaintiff, that is, the court would not do indirectly what it could not do directly).

While the result of eschewing review of the merits of a decision that has led to a substantial award of attorney fees may be somewhat disquieting at times, we see no ultimately principled and persuasive reason to deviate from the above line of authority. We will, instead, adhere to the wide agreement by appellate judges that they should not undertake to delve into the details of a district court's resolution of a controversy that has since become moot in order to decide the ancillary question of fees.

**[15]** All of the above being true, the portion of the attorney fee award based upon the ESA still stands.

## II. Contempt

**[16]** As we see it, the contempt order issued by the district court was based upon a claimed violation of the terms of the district court's CWA judgment of August 21, 2006, but that judgment must fall for lack of jurisdiction. Thus, whether the contempt order expanded or merely explicated the judgment,[15] that order must inexorably fall along with the judgment itself.[16]

## CONCLUSION

The district court determined that Marina Point had violated the CWA and had either violated or would violate the ESA. *See Center I*, 434 F. Supp. 2d at 795-98. However, because it lacked jurisdiction over the CWA claims and because the ESA claims have become moot, we vacate its judgment and remand with directions to dismiss for lack of jurisdiction.

Concomitantly, we reverse the contempt order. We also vacate the award of attorney fees to the extent that it is based upon the CWA and remand so that the district court can determine what portion of the attorney fee award was based upon the ESA and reenter judgment as to that portion only.

Judgment After Trial on the merits (No. 06-56193) VACATED and REMANDED with instructions to dismiss for mootness (ESA) and lack of jurisdiction (CWA).[17] Order

---

[15]*See A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098-99 (9th Cir. 2002); *Mayweathers v. Newland*, 258 F.3d 930, 935 (9th Cir. 2001).

[16]Were we required to consider the merits of that order, it would necessarily have to be set aside. It is plain that no development on the project site took place. And it is equally plain that Marina Point did not fail to take measures directed by the Corps. In short, Marina Point cannot be said to have violated the terms of the judgment at all, much less to have done so contemptuously. That would also require setting aside the order, to the extent, if any, that it was based, in part, on the ESA.

[17]The district court's opinion is also vacated. *See Center I*, 434 F. Supp. 2d at 789.

of Contempt (No. 07-56574) REVERSED. Order Awarding Attorneys Fees (No. 07-55243) VACATED and REMANDED.

---

RYMER, Circuit Judge, concurring:

I fully concur in Judge Fernandez's amended opinion.[1] However, I do question the wisdom of case law compelling us to uphold an award of attorney's fees on the Center's claim under the Endangered Species Act (ESA) that became moot on appeal.

While fees attributable to the preliminary injunction the Center achieved may be defensible on the footing that the relief was, after all, not appealed and presumably protected the bald eagle while it was in force, permanent relief was ultimately not secured. It isn't obvious that the party who obtained preliminary relief, but loses it for whatever reason, has nevertheless prevailed such that fees are appropriately recoverable for all the work along the way. *See Sole v. Wyner*, 551 U.S. 74, 127 S.Ct. 2188 (2007).

Here, permanent relief was not obtained. Although this is because the Center's ESA claim was mooted by de-listing of the bald eagle, the fact remains that the Center ends the day

---

[1]I concur because I feel bound by *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189 (9th Cir. 2007). In UFO, we said "when 'a party . . . achieves the objective of its suit by means of an injunction issued by the district court[, it] is a prevailing party in that court, notwithstanding the fact that the case becomes moot, through no acquiescence by the defendant, while the order is on appeal.' " *Id.* at 1197 (quoting *Dahlem v. Bd. of Educ. of Denver Pub. Schs.*, 901 F.2d 1508, 1512 (10th Cir. 1990)). *UFO* was decided after the Supreme Court's decision in *Sole v. Wyner*, 551 U.S. 74, 127 S.Ct. 2188 (2007), so I take it the opinion said this advisedly. In my view, that language describes precisely the posture of this case. Thus, I believe we, as a three-judge panel, are constrained to affirm.

with no benefit. The injunction was dissolved, and "otherwise undone" by our final decision in this case. *Sole*, 127 S.Ct. at 2195 (holding that prevailing party status "does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case"). At the same time, de-listing the bald eagle mooted Marina Point's appeal from the judgment, thereby depriving it of an opportunity to challenge the merits of the court's ruling that it violated the ESA. Had it succeeded in this challenge, the Center would not be a prevailing party to whom fees could be awarded.

In these circumstances, why isn't a case that is moot for one purpose moot for all purposes? That is to say, if the ESA claim is moot, as it now is, thereby preventing appellate review of its merit, why shouldn't the claim be moot as to *both* the judgment *and* its collateral consequence — an award of attorney's fees? Why shouldn't each be vacated as both are, effectively, incontestable? *See Alioto v. Williams*, 450 U.S. 1012, 1012-14 (1981) (Rehnquist, J., dissenting from denial of petition for a writ of certiorari).

Thirty years ago the Supreme Court left the question open. In *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 483 (1990), it asked whether the plaintiff there could be deemed a "prevailing party" in the district court even though its judgment was mooted after being rendered but before the losing party could challenge it on appeal — a question, the Court noted, "of some difficulty." It certainly is. Perhaps it is time, and this is the case, for the question to be answered afresh. Unfortunately, our panel is hamstrung from doing so disentangled from precedent we are obliged to follow.

---

KLEINFELD, J., concurring in part and dissenting in part:

I concur in all parts of the majority opinion except the portion regarding the award of attorneys' fees on the Endangered

Species Act claims. Because I would vacate the award of attorneys' fees on those claims, I respectfully dissent.

The Center is not a "prevailing party" because we are vacating the judgment on the Endangered Species Act claims, which is the basis for the fee award. Since the Center is no longer a prevailing party, we should also vacate the award of attorneys' fees. This is the appropriate course under the Supreme Court's decision in *Lewis v. Continental Bank Corp.*[1] As the Court explained in *Lewis*, the "ordinary practice in disposing of a case that has become moot on appeal is to vacate the judgment with directions to dismiss."[2] The effect of an order vacating a judgment on mootness grounds is to "deprive [the plaintiff] of its claim for attorney's fees . . . because such fees are available only to a party that 'prevails' by winning the relief it seeks."[3] The Court did not follow this ordinary practice in *Lewis* only because it remanded for further proceedings, having concluded that the plaintiff might have "some residual claim" under the new statutory framework.[4]

In our case, the de-listing of the bald eagle has not left any "residual claims" that the Center could assert on remand. Accordingly, this case is controlled by the "ordinary practice" in *Lewis* for disposing of cases that have become moot on appeal, which is to vacate the judgment with directions to dismiss.[5] Under *Lewis*, we should vacate the fee award because

---

[1]494 U.S. 472 (1990).

[2]*Id.* at 482 (citing *Deakins v. Monaghan*, 484 U.S. 193, 204 (1988); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950)).

[3]*Id.* at 480 (citing *Rhodes v. Stewart*, 488 U.S. 1 (1988) (per curiam); *Hewitt v. Helms*, 482 U.S. 755 (1987)).

[4]*Id.* at 482-83.

[5]*Id.*; *see also Karcher v. May*, 484 U.S. 72, 82-83 (1987) (holding that vacatur of a judgement is appropriate when review is "prevented through happenstance," such as when the controversy presented for review has "become moot due to circumstances unattributable to any of the parties"); *Munsingwear*, 340 U.S. at 40.

there is then no longer a valid judgment in favor of the Center.

It is true that until the date of de-listing, first the preliminary injunction, and then the permanent injunction, temporarily gave the Center the relief it sought. Under the Supreme Court's recent decision in *Sole v. Wyner*, this temporary victory does not make the Center a "prevailing party."[6] "Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case."[7] The Court rejected the district court's method of analyzing the plaintiff's success in "phases," instead emphasizing that the plaintiff "had gained no enduring 'chang[e] [in] the legal relationship' between herself and the state officials she sued."[8]

Here, it does not matter that the Center temporarily "prevailed" during earlier phases of the litigation, because the Center has not obtained any permanent relief. We are dissolving the permanent injunction, and the preliminary injunction's effect is "otherwise undone" by our decision in this case, which will allow Marina Point to proceed.[9] A "prevailing party" must secure a "judicially sanctioned change in the legal relationship between the parties."[10] Here, there is no enforceable "judgment" because we are vacating it. As in *Sole*, the "victory" in effect while this appeal was pending is too ephemeral to make the Center a prevailing party.[11] It makes no sense to award attorneys' fees based on a "judgment" that no longer exists (because we are vacating it), and that entitles the party to no legally enforceable relief.

---

[6]551 U.S. 74, 127 S. Ct. 2188 (2007).

[7]*Id.* at 2195.

[8]*Id.* at 2196 (alterations in original).

[9]*See id.* at 2195.

[10]*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600, 605 (2001).

[11]*See Sole*, 127 S. Ct. at 2196; *cf. Rhodes*, 488 U.S. at 4.

I would distinguish our decision in *UFO Chuting of Hawaii, Inc. v. Smith* to the extent it contains language suggesting a contrary result.[12] Both the facts and the procedural posture of *UFO Chuting* differ materially from this case. In *UFO Chuting*, the district court granted plaintiffs a permanent injunction, which barred enforcement of a Hawaii law that the court found to be preempted by federal law.[13] After the injunction was in effect, Congress changed the applicable federal law.[14] Based on the intervening change in federal law, the district court then stayed the permanent injunction and vacated its prior judgment.[15] On appeal, we affirmed the *denial* of attorneys' fees to the plaintiffs, not a grant of attorneys' fees.[16] We explained that entry of judgment in a party's favor "does not automatically render that party a 'prevailing party' " for the purpose of a fee award, because the plaintiff must also show that the judgment "somehow affected the behavior of the defendant towards the plaintiff."[17] We held that the plaintiff's temporary "victory" — securing entry of the permanent injunction — was negated by the subsequent change in the law upon which the plaintiff's claims were based.

In *UFO Chuting* the district court did not err, and the change in law that mooted out the appeal vindicated the injunction.[18] In our case, by contrast, the district court did err, and granted an injunction based on two things, an error in the application of the Clean Water Act, and a judgment about the Endangered Species Act vitiated by the regulatory change. Since *UFO Chuting* did not cite *Sole*, I do not think it stands

---

[12]508 F.3d 1189 (9th Cir. 2007).

[13]*Id.* at 1191.

[14]*Id.* at 1191-92.

[15]*Id.* at 1192.

[16]*Id.* at 1197-98.

[17]*Id.* at 1197.

[18]*See id.* at 1198.

as a Ninth Circuit interpretation of *Sole* that must be followed.[19] In *Sole*, the plaintiffs actually got what they wanted, to display themselves naked on the beach, they just were denied the right to do it again.[20] The Supreme Court said their victory was too "ephemeral" for prevailing party status.[21]

*A fortiori*, the victory is too ephemeral here for prevailing party status and attorneys' fees, because the Center never won what it wanted under the Endangered Species Act. It only got to delay development based on the now-moot Endangered Species Act claims and the district court's error on the Clean Water Act claims.

---

[19]*Cf. Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc); *see also Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d 1208, 1218 (9th Cir. 2007).

[20]127 S. Ct. at 2193-94.

[21]*Id.* at 2195.