NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TAN PHU CUONG INVESTMENT LLC, a Washington Limited Liability Company; EMILIYA SHUPARSKAYA, a married woman as her separate property, | No. 19-36051 |
| | D.C. No. 2:18-cv-01102-JCC |
| Plaintiffs-Appellants, | MEMORANDUM[*] |
| v. | |
| KING COUNTY, a political subdivision of the State of Washington, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Submitted October 9, 2020[**]
Seattle, Washington

Before: HAWKINS, GILMAN,[***] and CALLAHAN, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

This case concerns seven low-lying properties in unincorporated King County, Washington. The plaintiffs, Tan Phu Cuong Investment LLC and Emilia Shuparskaya, purchased the properties with the intent of developing them, but standing water and soil-percolation issues dampened their plans. They sued King County, advancing a host of claims under state and federal law. The district court granted summary judgment against the plaintiffs on the two claims implicating federal law: that the County, in channeling water onto the plaintiffs' lots, effected a taking in violation of the United States and Washington constitutions, U.S. Const. art. 1, § 5; Wash. Const. art. 1, § 16, and that the County was violating its stormwater obligations under the Clean Water Act, 33 U.S.C. §§ 1251-1388. The court remanded the remaining claims to state court. We have jurisdiction under 28 U.S.C. § 1291 and, reviewing de novo, we affirm.

1. The plaintiffs did not suffer a physical taking because the pooling and drainage issues predated their purchase of the properties. When the government physically invades private property without compensation, it is the owner at the time who acquires an inverse-condemnation claim. *Palazzolo v. Rhode Island*, 533 U.S. 606, 628 (2001) (citing *Danforth v. United States*, 308 U.S. 271, 284 (1939)); *United States v. Dow*, 357 U.S. 17, 22 (1958). The claim does not pass to subsequent purchasers, *Palazzolo*, 533 U.S. at 628, who are presumed to have been compensated for the invasion through a reduced purchase price, *Wolfe v. State*

2

*Dep't of Transp.*, 293 P.3d 1244, 1247 (Wash. Ct. App. 2013).

The record here confirms that any governmental intrusion occurred prior to 2015 and 2016, when the plaintiffs bought their lots. The County has historically listed the lots as unbuildable in its public database, and the plaintiffs acquired them for a price commensurate with that designation. One neighbor testified that water had pooled on Shuparskaya's lot for over twenty years. Another, a builder himself, stated that soil conditions had impeded the lots' development for the past fifty years. In addition, a seller warned Tan Phu Cuong about the properties' soil issues, and Shuparskaya purchased her lot without any formal wetland or drainage inspection. She conceded the possibility of water existing on her property "for some time." Thus, even assuming that a taking in fact occurred, it was past owners rather than the plaintiffs who obtained a right to compensation.[1] *See Wolfe*, 293 P.3d at 1246–48 (rejecting a takings claim where the plaintiffs failed to show "any new governmental action" causing a further diminution in market value "since they purchased the properties").

---

[1] The plaintiffs' reliance on *United States v. Dickinson*, 331 U.S. 745 (1947), is unavailing. There the Court held that, for statute-of-limitations purposes, "when the Government . . . bring[s] about a taking by a continuing process of physical events," the cause of action does not arise "until the situation becomes stabilized." *Id.* at 749. The plaintiffs offer no support for their contention that, here, the situation "stabilized" only after they bought the lots. By that point, as reflected in the lots' market values, the "consequences of inundation" had already "manifested themselves." *See id.*

2.  Insofar as the plaintiffs assert that the County's identification of wetlands on their lots constituted a regulatory taking, this claim also fails.[2]  A regulatory taking occurs when "government regulation of private property [is] . . . so onerous that its effect is tantamount to a direct appropriation or ouster."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005).  The inquiry turns primarily on "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations."  *Id.* at 538–39 (quoting *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 124 (1978)).  The plaintiffs do not discuss these factors and, in any case, have failed to identify any economic injury attributable to the County's regulation of their properties.  *See Colony Cove Prop., LLC v. City of Carson*, 888 F.3d 445, 452 (9th Cir. 2018) (comparing "the value that has been taken from the property with the value that remains in the property" and emphasizing that the plaintiff's expectations must be objectively reasonable (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987)).  Furthermore, the plaintiffs have yet to seek available variances, rendering their regulatory-takings claim unripe.

---

[2]     The County urges us to deem this argument waived due to the plaintiffs' failure to raise it below.  The plaintiffs did assert a takings claim in their complaint, however, so they are free to argue a regulatory taking on appeal.  *Cf. Yee v. City of Escondido*, 503 U.S. 519, 535 (1992) ("Having raised a taking claim in the state courts, therefore, petitioners could have formulated any argument they liked in support of that claim here.").

*See Lai v. City & Cty. of Honolulu*, 841 F.2d 301, 303 (9th Cir. 1988).

3.  Finally, the district court properly dismissed the plaintiffs' Clean Water Act claim. The Clean Water Act authorizes private citizens to sue to enforce its provisions. 33 U.S.C. § 1365(a); *Ctr. for Bio. Div. v. Marina Pt. Dev. Co.*, 566 F.3d 794, 799 (9th Cir. 2009). But before a citizen can file suit, he or she must give notice to the alleged violator, as well as to federal and state enforcement agencies. 33 U.S.C. § 1365(b)(1)(A). The requirement is jurisdictional; when a party fails to give notice, the court must dismiss the claim. *Ctr. for Bio. Div.*, 566 F.3d at 800. Although the plaintiffs undisputably failed to provide notice, they protest that theirs is not truly a citizen suit. Their complaint, however, alleges "Clean Water Act violations" and seeks an order requiring the County to comply with applicable stormwater permits and regulations. It is hard to see this as anything other than a Clean Water Act claim, and to the extent that it does not arise under the citizen-suit provision, it is precluded by the Act's broad remedial scheme.[3] *See Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15–16 (1981) (rejecting the argument that the Clean Water Act's savings clause saves claims alleging substantive violations of "the very statute in which [it is] contained").

---

[3]  The plaintiffs' state-law negligence claim, which also references the Clean Water Act, is not properly before this Court because the district court remanded it, and the County did not appeal that decision.

5

**AFFIRMED.**